Herbert S. Lichtenberg and Trudy Lichtenberg v. Commissioner. Alvin Lerner v. Commissioner. Leo Benjamin and Ethele Benjamin v. Commissioner.
Lichtenberg v. Commissioner
Docket Nos. 3631-65, 6207-65, 6278-65. .
United States Tax Court
T.C. Memo 1967-130; 1967 Tax Ct. Memo LEXIS 130; 26 T.C.M. (CCH) 583; T.C.M. (RIA) 67130; June 14, 1967
*130 Petitioners made payments on their post-incorporation subscriptions for the stock of a corporation after its incorporation on April 20, 1962. Such payments were made over a period from April 20, 1962, to June 20, 1962. No stock certificates were issued at the time of the payments. In December 1962, after the corporation had ceased the operation of its restaurant business and had become insolvent, the corporation adopted a plan for the issuance of stock within the provisions of section 1244 of the 1954 I.R.C., and, pursuant to such plan, stock certificates for 65 shares of common stock were executed and delivered to each of the petitioners. Held, the 65 shares of stock issued in December 1962 to each of the petitioners do not qualify as "section 1244 stock." Wesley H. Morgan, 46 T.C. 878, followed. Roy Albert Povell, 14 Wall St., New York, N. Y., for the petitioners. Robert D. Whoriskey, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies *132 in income tax for the year 1962 in these consolidated cases as follows: De-
Docket No.
Petitioner
Year
ficiency
3631-65
Herbert S. Lichten-
berg, et ux.
1962
$4,081.40
6207-65
Alvin Lerner
1962
3,979.05
6278-65
Leo Benjamin, et ux.
1962
2,054.88
The issue that is here involved in all of the cases is whether petitioners held section 1244 stock that became worthless in 1962 so that they would be entitled to ordinary loss treatment under section 1244(a), I.R.C. 1954. [1]
Findings of Fact The stipulated facts are found accordingly. Petitioners Herbert S. Lichtenberg and his wife Trudy Lichtenberg are residents of North Woodmere, New York. They filed their joint income tax return for 1962 with the district director of internal revenue for the Manhattan District, New York, New York. Petitioners Leo Benjamin and his wife Ethele Benjamin are residents of Brooklyn, New York. They filed their joint income tax return for 1962 with the district director of internal revenue for the Brooklyn District, New York. Petitioner Alvin Lerner *133 is a resident of Brooklyn, New York. He filed his income tax return for 1962 with the district director of internal revenue for the Brooklyn District, New York. In early 1962, Herbert Kaplan and Fred Kaplan persuaded petitioners Herbert Lichtenberg, Leo Benjamin and Alvin Lerner (who will sometimes be referred to as petitioners) to finance a proposed small restaurant business. Because the position of these petitioners was to be entirely passive, it was determined that a New York corporation would be formed to assure them of limited liability. It was understood that the Kaplans would assume the functions of employees, officers and directors of said corporation and initiate the restaurant business, but would not contribute capital in the form of equity. The petitioners informally agreed, among themselves and with the Kaplans, to contribute, pro rata, for all the shares of said corporation. Pursuant to this understanding, on April 20, 1962, H.F.K. Corp., sometimes called H.F.K., was formed under the laws of New York State for the purpose of operating a restaurant in New York City. The corporation was formed by the execution of so-called "Blumberg forms" and the certificate of incorporation *134 of H.F.K. Corp. shows that parties named George Kittner, Elias Wohl and Florence Beckerman, all of New York, were the original incorporators of the corporation. [2]
On or about April 20, 1962, the attorney arranging for H.F.K.'s incorporation delivered to the Kaplans a copy of the certificate of incorporation subscribed by the above incorporators and a minute book containing documents which the incorporators, or a majority of them, executed in blank. In the minute book there was a document entitled "Minutes of the First Meeting of the Incorporators and Subscribers to the capital stock of * * *". This was signed in blank by Elias Wohl as "Secretary of Meeting" and Florence Beckerman as "Chairman of Meeting". To this document there was attached a document entitled "Waiver of Notice of the First Meeting of Incorporators and Subscribers". This document was also signed in blank by Elias Wohl and Florence Beckerman. The only other material delivered to the Kaplans by the attorney consisted of two "Assignment of Incorporator's *135 Subscription" and board of directors' resignations, one of each of the aforesaid being executed in blank by Elias Wohl and one of each being executed in blank by Florence Beckerman. The minute book reveals another document executed on April 24, 1962, which is the corporate banking resolution which was executed by the directors Herbert Kaplan as president and Fred Kaplan as secretary. The resolution designates the Manufacturers Hanover Trust Company as depository and provides for their authorized signatures with respect to corporate funds. Pursuant to the underlying general agreement outlined above, and after the formation of H.F.K., petitioners made their contribution to the capital of the corporation, as follows: Herbert
Leo
Lich-
Ben-
Alvin
Date
tenberg
jamin
Lerner
Total
Apr. 20, 1962
$1,000
$ 1,000
Apr. 23, 1962
$5,500
5,500
$5,500
16,500
May 24, 1962
1,000
1,000
Jun. 20, 1962
1,000
1,000
$6,500
$6,500
$6,500
$19,500
No stock certificates were delivered to petitioners contemporaneously with the above contributions. During this time, H.F.K. initiated its business activities, the Kaplans assuming full day-to-day *136 responsibility as intended. The demands of daily operations upon the Kaplans, however, resulted in all formal actions of the corporation being postponed from time to time. Initially and for approximately three months after commencing the business, H.F.K. actually conducted its restaurant operations. The financial condition of H.F.K. deteriorated and the accountant's work sheets for H.F.K. disclose no entries beyond July 1962, and H.F.K. ceased restaurant operations, becoming insolvent at the latest by the end of November 1962. It is stipulated that on or about December 15, 1962, the blank portions of the early documents or entries in the minute book were filled in. The insertions, which we have indicated by underlining, made the document entitled "Minutes of the First Meeting of the Incorporators and Subscribers" pertain to H.F.K. Corp. and recite the meeting was held at 1475 Broadway, New York, New York, on the 24th day of April, 1962 at 1 o'clock in the afternoon and that the following were present: Messrs. George Kittner, Elias Wohl and Florence Beckerman. The December insertions fixed the place of business at 6 Stone Street in the City of New York and fixed the date when *137 Edward Wohl and Florence Beckerman signed the minutes as 24th day of April, 1962. The waiver of notice of this first meeting contained similar inseritions made on December 15, 1962 to make it applicable to the above meeting. Also the blanks on the "Assignment of Incorporator's Subscription" and board of directors' resignations which had been signed in blank by Elias Wohl and Florence Beckerman were filled in. The insertions also made on December 15, 1962 on these documents made them read as applicable to H.F.K. Corp. and made the execution date the 24th day of April, 1962, with Elias Wohl assigning his interest as an incorporator and subscriber to Herbert Lichtenberg to the extent of "SIXTY-FIVE (65) Shares of the capital stock" and Florence Beckerman assigning her interest as incorporator and subscriber to Leo Benjamin to the extent of SIXTY FIVE (65) shares of the capital stock. Herbert Kaplan's signature was inserted as witness to both the signatures of Elias Wohl and Florence Beckerman. The next document in the minute book is the waiver of notice and minutes of special meeting of the board of directors with Herbert Kaplan as president and Fred Kaplan as secretary, which are *138 both dated December 21, 1962. The minutes of this meeting provide, in part, as follows: The President stated that the meeting had been called to consider, among other things, the issuance under Section 1244 of the Internal Revenue Code of 1954, as amended, of common stock of the Corporation which has earlier been subscribed for by assignors to Messrs. Herbert Lichtenberg, Leo Benjamin and Alvin Lerner. After discussion, and upon motion duly made and seconded, the following resolution was adopted: WHEREAS, the original incorporators and subscribers to the capital stock of the Corporation have sold, assigned, transferred and set over unto Herbert Lichtenberg, Leo Benjamin and Alvin Lerner all their right, title and interest as such original incorporators and subscribers to the capital stock of the Corporation to the extent of One Hundred and Ninety-five (195) shares of the capital stock of the Corporation, and WHEREAS, each of the aforesaid subscription assignees, Herbert Lichtenberg, Leo Benjamin and Alvin Lerner, has paid to the Corporation $6,500 with respect to their respective subscription rights, such aggregate of $19,500 being the total initial equity *139 capital of the Corporation, and WHEREAS, the Corporation has assured the aforesaid subscription assignees that the issuance of such shares would be effectuated in such a manner as to qualify them as stockholders eligible to receive the benefits of Section 1244 of the Internal Revenue Code of 1954, as amended, and WHEREAS, there is no capital stock of the Corporation now outstanding nor any offering, or portion thereof, of this Corporation to sell or issue any of its stock except as aforesaid, and WHEREAS, this Corporation is a small business corporation as defined in Section 1244(c)(2) of the Internal Revenue Code of 1954, as amended, NOW, THEREFORE, BE IT RESOLVED, that the President and the Secretary of this Corporation be, and they hereby are, authorized and directed to issue up to One Hundred Ninety-five (195) shares of the common stock of this Corporation in the total dollar amount of not more than Nineteen Thousand Five Hundred ($19,500) Dollars, at One Hundred ( $100) Dollars per share in fulfillment of the Corporation's obligations to the assignees of subscriptions as aforesaid, such shares of the common stock of this *140 Corporation to be issued this date, December 21, 1962. After the adoption of the plan, as aforesaid, stock certificates were executed and delivered to each of the petitioners for 65 shares of common stock and without par value. According to H.F.K.'s records, during the entire period of its existence, the meeting of December 21, 1962 was the only board of directors' meeting held and the stock certificates executed and delivered in accordance with the resolutions adopted at such meeting were the only H.F.K. stock certificates ever executed and delivered. Upon confirming that H.F.K. had become insolvent, such shareholders executed a certain Certificate of Dissolution of Corporation pursuant to paragraph 10 of the Stock Corporation Law of the State of New York and caused such certificate to be mailed to the Secretary of State of New York on December 27, 1962. No assets of any value of H.F.K. remained available for distribution to the petitioner upon its dissolution and none were distributed. During the entire period of H.F.K.'s existence, that corporation derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, *141 annuities and sales or exchanges of stock or securities. Petitioners' H.F.K. common stock became valueless during the calendar and taxable year 1962 of each of the petitioners and during the initial short calendar and taxable year of H.F.K. Each petitioner took a $6,500 ordinary loss deduction on his 1962 income tax return because of the worthlessness of said stock. Respondent disallowed the deductions on the ground that the losses were capital losses and would not qualify as ordinary losses. Opinion Shareholders in a small business corporation can, if certain requirements are met, take an ordinary loss deduction (within certain limitations not here applicable) on the worthlessness of their stock. Section 1244(a), I.R.C. 1954 provides, in effect, that a loss "on section 1244 stock" issued to an individual or a partnership shall be treated as an ordinary loss. Section 1244(c)(1) provides, in part, as follows: (c) Section 1244 Stock Defined. - (1) In General. - For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer such stock for *142 a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and * * *
There is one more requirement set forth in section 1244(c)(1)(E) making it necessary that the corporation derive more than 50 percent of its gross receipts from sources other than royalties and other named sources, which, it is stipulated, was satisfied here. It is also admitted that H.F.K. Corp. met the capital limitations contained in section 1244(c)(2). [3] The only issue here is under section 1244(c)(1)(D) whether petitioners' "stock was issued by such corporation, pursuant to such plan, for money or other property * * *." *143 It is respondent's position that under general corporation law petitioners became stockholders when they each paid their sixty-five hundred dollars and their stock is to be considered "issued" for the purposes of the statute at that time. Since the payments preceded the adoption of the plan it cannot be said the stock was issued pursuant to the plan even though the certificates were issued after the adoption of the plan. We held exactly as respondent contends in Wesley H. Morgan, 46 T.C. 878. The only difference between that case and this is that in Morgan a paid preincorporation subscription was involved where the taxpayer became a stockholder upon incorporation but the plan was adopted about two months later and the certificate was delivered about one month after the plan was adopted. Here there are paid post-incorporation subscriptions that preceded the adoption of the plan but that fact is not a significant distinction. In both cases the status of shareholder was attained some months before the adoption of the plan and only the physical delivery of the certificates to the shareholders took place after the adoption of the plan. Petitioners agree that under corporation *144 law generally petitioners, as post-incorporation subscribers, became stockholders when they each paid $6,500 to the corporation. Petitioners argue that under the law and the Commissioner's regulations it is only necessary that the plan precede the actual issuance of the stock certificates. [4]
Petitioners argue that attaining shareholder status by means of subscription or otherwise does not make them recipients of issued stock. They point to respondent's regulations where they contend the language shows it is the actual issuance of the stock certificates pursuant to and after the adoption of the plan that is contemplated. Petitioners cite section 1.1244(c)-1(a), Income Tax Regs., wherein it is stated that certain requirements must be satisfied but that the determination as to whether such requirements are met may be made at or before the time "* * * stock is issued." This is merely another way of saying the stock must be "issued * * * pursuant to such plan" which is the requirement of section *145 1244(c)(1)(D). In other words, the language of the regulation is not authority for saying the word "issued" is to be interpreted as the manual issuance of the stock certificate. Petitioners' main argument is that their position is supported by the language of two other regulations. They first cite sec. 1.1244(c)-1(c)(2), Income Tax Regs., which provides, in part: To qualify, the stock must be issued during the period of the offer, which period must end not later than two years after the date the plan is adopted. Stock which is subscribed for during the period of the plan but not issued during such period cannot qualify as section 1244 stock. * * * There is nothing in this section that authorizes the adoption of the plan after the money is invested and the status of shareholder achieved by the paid subscription route. It is true that the two-year limitation period starts with the date of the adoption of the plan and not necessarily from the date they became shareholders. But the plain meaning of the statute and the regulations is that the adoption of the plan be before or contemporaneous with the investment of funds and achieving shareholder status. *146 It is significant that if petitioners' definition of "issued" as meaning physical delivery of the stock certificates, even to persons who have been shareholders for months, were to be adopted then this regulation and the requirement of section 1244 (c)(1)(A) could be largely nullified. We are dealing here with small corporations, generally with one or few stockholders. Admittedly, they could obtain shareholder status by payment for stock to be issued at some future date. Thus the plan could be adopted and the certificates issued whenever such shareholders felt it would be convenient, which could be 10 years after they invested their funds and became shareholders by virtue of paid subscriptions. The other regulation on which petitioners chiefly rely is sec. 1.1244(c)-1(c)(3), Income Tax Regs., which provides as follows: Stock subscribed for prior to the adoption of the plan, including stock subscribed for prior to the date the corporation comes into existence, may be considered issued pursuant to a plan adopted by the corporation if the stock is not in fact issued prior to the adoption of such plan. Petitioners argue the use of the phrase "may be *147 considered issued" reflects recognition that the status of stockholder can arise immediately on subscription but, for the purpose of section 1244, stock may be considered issued if the stock was not in fact issued prior to the adoption of such plan. We considered this last regulation in our opinion in Morgan, supra, in footnote 8 and stated the regulation "obviously refers to a stock subscription conditioned upon adoption of a plan." The legislative history of section 1244 as a part of the Small Business Tax Revision Act of 1958 shows it was "designed to encourage the flow of new funds into small business." H. Rept. No. 2198, 85th Cong., 2d Sess., 1959-2 C.B. 709, 714. It would not encourage the flow of new funds into a business to interpret respondent's regulations as providing that funds invested in stock months before the plan was adopted and the worthless certificates issued be accorded the preferential treatment granted by the statute. The adoption of the plan was not designed to be a liquidation maneuver. [5] The plan was to bring funds into the corporation and its adoption was not to be a move of a dissolving corporation that would bring about an *148 ordinary loss deduction to its capital investors who had no thought of the plan at the time they became shareholders. Petitioners cite some New York cases such as Rutter v. Kilpatrick, 63 N.Y. 604 1876) where a state statute provided some special legal relationship depended upon the issuance of a certificate, such as lien status, and the court held stockholder status when no certificate was issued was insufficient. Such cases have no application here. Petitioners make no effort to distinguish Morgan, supra, except to say the law of the State of Colorado, where that case arose, might be different than the law of New York. Their chief contention is that Morgan, supra, was incorrectly decided. We are not willing to hold our decision in Morgan was wrong. This case is not distinguishable from Morgan. On the reasoning and the conclusion there stated we hold for respondent. Decisions will be entered for the respondent in Docket Nos. 6207-65 and 6278-65. For the purpose of another adjustment that is *149 not contested, decision will be entered under Rule 50 in Docket No. 3631-65. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. It fairly appears from unchallenged statements in petitioners' brief that the original incorporators were merely employees of the attorney forming the corporation.↩
3. (c) Section 1244 Stock Defined. - * * *
(2) Small Business Corporation Defined. - For purposes of this section, a corporation shall be treated as a small business corporation if at the time of the adoption of the plan - (A) the sum of - (i) the aggregate amount which may be offered under the plan, plus (ii) the aggregate amount of money and other property (taken into account in an amount, as of the time received by the corporation, equal to the adjusted basis to the corporation of such property for determining gain, reduced by any liabilities to which the property was subject or which were assumed by the corporation at such time) received by the corporation after June 30, 1958, for stock, as a contribution to capital, and as paid-in surplus, does not exceed $500,000; and (B) the sum of - (i) the aggregate amount which may be offered under the plan, plus (ii) the equity capital of the corporation (determined on the date of the adoption of the plan), does not exceed $1,000,000. For purposes of subparagraph (B), the equity capital of a corporation is the sum of its money and other property (in an amount equal to the adjusted basis of such property for determining gain), less the amount of its indebtedness (other than indebtedness to shareholders).↩
4. Sec. 1244(e)↩ provides: "The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section."
5. It was stipulated the certificate of dissolution was executed by petitioners as shareholders within a week after the adoption of the plan.↩